IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| AGFEED USA, LLC, *et al.*, | : | Bankr. Case No. 13-11761-BLS |
| Debtors. | : | (Jointly Administered) |
| | : | |
| JLL CONSULTANTS, INC. not individually but | : | |
| solely as Trustee of the AgFeed Liquidating Trust, | : | Adv. Proc. No. 15-50929-BLS |
| | : | |
| Plaintiff, | : | |
| v. | : | Civ. No. 15-1113-LPS |
| | : | Civ. No. 15-1194-LPS |
| GOLDMAN KURLAND & MOHIDIN, LLP | : | |
| and PICKARD AND GREEN, CPAs, FOUR | : | |
| TONG INVESTMENTS, LTD., a/k/a and/or | : | |
| d/b/a FOUR TONG INVESTMENT LTD., and | : | |
| JOHN DOE DEFENDANTS 1 THROUGH 10, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

Goldman Kurland & Mohidin, LLP ("Goldman") and Pickard & Green, CPAs

("Pickard"), defendants in the above-captioned adversary proceeding ("Defendants"), move this

Court (the "Motions to Withdraw"), pursuant to 28 U.S.C. § 157(d), to withdraw reference of the

adversary proceeding to the United States Bankruptcy Court for the District of Delaware

("Bankruptcy Court").[1]  (Civ. No. 15-1113, D.I. 1; Civ. No. 15-1194, D.I. 1)  For the reasons

stated below, the Court will deny the Motions to Withdraw without prejudice.

**I.     BACKGROUND**

This matter arises from a complaint filed against Defendants and others in the above-

captioned Chapter 11 cases (Adv. D.I. 1) (the "Complaint").  Debtors AgFeed Industries, Inc., *et*

---

[1] The docket of the adversary proceeding, *JLL Consultants, Inc. v. Goldman Kurland & Mohidin, LLP, et al.*, Adv. Pro. No. 15-50929-BLS (Bankr. D. Del.), is referred to herein as "Adv. D.I. __."  The docket of the Chapter 11 cases, *In re AgFeed USA, LLC, et al.*, Case No. 13-11761-BLS (Bankr. D. Del.), is referred to herein as "Bankr. D.I. __."

*al.* (the "Company"), were born out of a reverse-merger of a China-based hog and feed producer and a Nevada corporation. (*See* Adv. D.I. 1 at ¶ 1) The Company manufactured and sold animal nutrition products, operating solely in China from its inception through the summer of 2010. (*Id.* at ¶ 2) In September 2010, the Company purchased U.S.-based hog producer M2P2 LLC and began a transition to a U.S.-centric board of directors. (*Id.* at ¶ 4)

Goldman is an accounting firm that allegedly provided accounting services to AgFeed from 2006 to 2013, including audits of 2008 and 2009 financial statements and work in connection with a special committee investigation from August 2012 to June 2013. (*Id.* at ¶ 12) Pickard is an accounting firm that allegedly reviewed the Company's financial statements from 2009 to 2010. (*Id.* at ¶ 13)

The Complaint alleges that, from 2007 through 2010, the Company reported exponential growth on its financial statements based on materially inaccurate financial reporting. (*See id.* at ¶ 6) The Complaint alleges that the Company's special committee investigation of its internal accounting and financial reporting issues identified extreme mismanagement of China-based operations, including the reporting of fictional assets and operations, as well as the keeping of two sets of books – one true and one to support the inflated revenues and profits reported in the financial statements. (*Id.* at ¶¶ 49-53) The Complaint further alleges that, in December 2011, the Company filed a Form 8-K with the SEC admitting that financial statements from 2008 through 2011 were false and unreliable due to "accounting improprieties." (*Id.* at ¶ 54)

On July 15, 2013 ("Petition Date"), the Company filed for relief under Chapter 11 of Bankruptcy Code. (Bankr. Case No. 13-11761-BLS, D.I. 1) On July 30, 2013, Goldman filed a proof of claim asserting $312,231 in unpaid fees and attaching invoices dated August 2012 through June 2013. (*See* Civ. No. 15-1194, D.I. 4-1) On October 4, 2013, Pickard filed a proof

of claim asserting $18,750 in unpaid fees for accounting services and attaching invoices dated

March 2013 through May 2013.  (*See* Civ. No. 15-1113, D.I. 5-1)

On November 4, 2014, the Bankruptcy Court approved the Company's Chapter 11 plan

of liquidation.  (Bankr. D.I. 1535)  As of the plan's effective date, all of the company's assets

were transferred to a liquidating trust.  JLL Consultants, Inc. was appointed as trustee

("Trustee") and designated to pursue the causes of action belonging to the liquidating trust,

including causes of action against the Defendants.  (*See id.* at Exh. A, § 6.3)  On July 15, 2015,

Trustee filed the Complaint, which alleges massive fraud upon the investing public arising out of

AgFeed's China-based operations.  Based on the accounting services Defendants provided, the

Complaint asserts certain state-law causes of action against both Pickard and Goldman, including

professional negligence, malpractice, and breach of contract.  (*See* Adv. D.I. 1 at ¶¶ 117-25, 129-

36)  The Complaint also asserts several causes of action against Goldman which arise under the

Bankruptcy Code, including recovery of fraudulent transfers pursuant to §§ 544 and 548;

recovery of avoidable transfers pursuant to § 550: and disallowance of Goldman's proof of claim

pursuant to § 502(d).  (*See id.* at ¶¶ 144-62)

Pickard filed its Motion to Withdraw on November 11, 2015 (Civ. No. 15-1113, D.I. 1),

and Goldman filed its Motion to Withdraw on December 4, 2015 (Civ. No. 15-1194, D.I. 1).[2]

Trustee has filed briefs in opposition to both Motions to Withdraw.  (Civ. No. 15-1113, D.I. 5;

Civ. No. 15-1194, D.I. 4)  The Court heard oral argument on April 5, 2016.  At the time the

---

[2] Pickard filed its Motion to Determine Authority to Enter Final Orders and Judgments Pursuant to Local Rule 5011-1 on December 23, 2015.  (Adv. D.I. 26)  On December 29, 2015, Pickard filed an amended version of same.  (Adv. D.I. 27)  Goldman filed its Motion to Determine Authority to Enter Final Orders and Judgments Pursuant to Local Rule 5011-1 on January 15, 2016.  (Adv. D.I. 34)  As of the date of this Memorandum, the Bankruptcy Court had not yet ruled on either of those motions.

Motions to Withdraw were filed, Trustee had obtained an extension through July 11, 2016 to effect service of process on additional defendants, and the deadline for foreign defendants to answer or otherwise respond to the Complaint had been extended through August 10, 2016. (*See* Adv. D.I. 48)  The docket reflects no further extension of those deadlines and that no answers have been filed to date.  The docket further reflects that no discovery has been served and no initial trial conference has been held. (*See* Adv. D.I. 49)

## II.   CONTENTIONS

Both Defendants contend that the Court should exercise its discretion to withdraw the adversary proceeding for cause pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011(a).  Pickard argues that the only two causes of action asserted against it in the Complaint are professional negligence and breach of contract, both arising under state law. (*See* Civ. No. 15-1113, D.I. 2 at 1-2)  Pickard argues that the proceeding is therefore non-core, because it does not involve any of the core proceedings listed under 28 U.S.C. § 157(b)(2), does not invoke a substantive right provided by title 11, and is not a proceeding that could arise only in the context of a bankruptcy case. (*See id.* at 5-8)  The Bankruptcy Court is without constitutional authority to issue a final judgment or order in a non-core proceeding without the consent of the parties; because Pickard will not consent, cause exists to withdraw the reference. (*See id.* at 2, 8)

Pickard further argues that other factors identified by the Third Circuit weigh in favor of finding that cause exists to withdraw the reference, including that its Motion to Withdraw was timely filed and that keeping the case in the Bankruptcy Court will waste judicial resources because this Court must ultimately review the Bankruptcy Court's proposed findings of fact and conclusions of law *de novo*. (*See id.* at 4-5, 8)  Finally, Pickard argues that the fact it filed a

4

proof of claim for unpaid professional fees in a nominal amount does not alone transform the adversary proceeding into a core proceeding. (*See id.* at 5 n.5)

As to the state-law claims against Goldman, Goldman has incorporated by reference the arguments made by Pickard in support of its Motion to Withdraw, including that, absent consent of the parties, the Bankruptcy Court is without authority to enter final judgments with respect to state common law claims, and Goldman does not consent. (*See* Civ. No. 15-1194, D.I. 2 at 1-2) Goldman further argues that withdrawal of the reference now will promote judicial economy by allowing the matter to be resolved in a single forum. (*Id.* at 3)  Goldman's main argument, however, is that the Bankruptcy Court is prohibited from conducting a jury trial, so withdrawal of the reference is the necessary to ensure Goldman's right to a trial. (*Id.* at 7)  Finally, Goldman disputes that it has submitted to equitable jurisdiction of the Bankruptcy Court and waived its right to a jury trial merely by filing a proof of claim. (*Id.* at 4)  Goldman contends the accounting services underlying the adversary proceeding are separate and distinct from the investigative services underlying its proof of claim. (*See* Civ. No. 15-1194, D.I. 7 at 4-5)

Conversely, Trustee argues that both of the Defendants irrevocably submitted to the equitable jurisdiction of the Bankruptcy Court by filing proofs of claim in the Chapter 11 cases. (*See* Civ. No. 15-1113, D.I. 5 at 5-6; Civ. No. 15-1194, D.I. 4 at 5)  Trustee argues that the Bankruptcy Court has statutory and constitutional authority to adjudicate all of the claims set forth in the Complaint, and to the extent any such claims are non-core or *Stern* claims (as defined herein), that court is fully capable of presiding over pretrial matters until the case is ready for trial and, when necessary, should be permitted to submit proposed findings of fact and conclusions of law. (*See id.* at 5-9)  Trustee adds that even assuming the Defendants' filing of proofs of claim does not resolve the issue, Defendants have failed to demonstrate cause to

withdraw the reference.  (*See* Civ. No. 15-1113, D.I. 5 at 9-11))  With respect to Defendants'

alleged right to a jury trial, Trustee argues that no demand has yet been made by the Defendants,

and the right to jury trial should play no role in this Court's analysis at such an early stage of the

proceeding.  (*See id.* at 11-13)[3]

## III.    LEGAL STANDARDS

District courts "have original but not exclusive jurisdiction of all civil proceedings

arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).

Pursuant to the authority granted by 28 U.S.C. § 157(a), this Court refers cases arising under title

11 to the United States Bankruptcy Court for the District of Delaware.  *See* Am. Standing Order

of Reference, Feb. 29, 2012 (C.J. Sleet).

Section 157(d) provides for situations when a district court ***may*** withdraw the reference

and when it ***must*** withdraw the reference:

> The district court may withdraw, in whole or in part, any case or
> proceeding referred under this section, on its own motion or on
> timely motion of any party, for cause shown.  The district court shall,
> on timely motion of a party, so withdraw a proceeding if the court
> determines that resolution of the proceeding requires consideration
> of both title 11 and other laws of the United States regulating
> organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).  For permissive withdrawal, "[t]he 'cause shown' requirement in section

157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated

in bankruptcy court unless rebutted by a contravening policy."  *Hatzel & Buehler, Inc. v. Cent.*

*Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989) (internal quotations omitted).  To

---

[3] Trustee also argued that the Motions to Withdraw were procedurally defective because
Defendants failed to file, in accordance with the Bankruptcy Court's Local Rule 5011-1, a
motion for determination of the Bankruptcy Court's authority to enter final orders and
judgments.  Each of the Defendants has since complied with Local Rule 5011-1 by filing the
required motion with the Bankruptcy Court.

overcome that presumption, the moving party has the burden to prove that cause exists to withdraw the reference. *See In re NDEP Corp.*, 203 B.R. 905, 907 (D. Del. 1996).

## IV.   DISCUSSION

### A. Equitable Jurisdiction of the Bankruptcy Court

In order to determine whether a party has waived its right to a jury trial by invoking the jurisdiction of the Bankruptcy Court, a "[c]ourt must analyze whether the resolution of the adversary proceeding is part of the claims resolution process." *NDEP*, 203 B.R. at 912; *see also Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1252 n.14 (3d Cir. 1994) (explaining that waiver requires submitting to claims allowance process).

Trustee argues as an initial matter that Defendants have already consented to the equitable jurisdiction of the Bankruptcy Court by each filing a proof of claim in the Chapter 11 cases, and Defendants cannot avoid the Bankruptcy Court's jurisdiction by seeking permissive withdrawal of the reference. (*See* Civ. No. 15-1113, D.I. 5 at 2, 5-6; Civ. No. 15-1194, D.I. 4 at 5) Trustee argues that withdrawal of the reference is only appropriate when a defendant is entitled to a jury trial and when that defendant did not previously submit a claim against the estate. (*See* Civ. No. 15-1113, D.I. 5 at 6) Trustee cites *EXDS, Inc. v. RK Elec., Inc.*, 301 B.R. 436, 439 (Bankr. D. Del. 2003), which states that "equity jurisdiction – where there is no right to a jury trial – [is] triggered by the filing of a claim in the chapter case." *See also Goldstein v. K-Swiss, Inc.*, 2002 WL 550035, at *1 (Bankr. D. Del. Apr. 9, 2002). Trustee argues that the proofs of claim filed by the Defendants for unpaid fees for accounting services arise out of the same engagement and same set of facts alleged in the adversary proceeding, thus triggering the claims resolution process. (*See* Civ. No. 15-1113, D.I. 5 at 13)

7

Goldman's proof of claim asserts $312,231 of unpaid fees for services rendered between August 2012 and June 2013. (*See* Civ. No. 15-1194, D.I. 4-1)  Goldman argues that the malpractice claims asserted by Trustee in the Complaint relate solely to the audit work Goldman was retained to perform in 2008 and 2009, and not the work Goldman performed in connection with the special committee investigation in 2012 and 2013. (*See* Civ. No. 15-1194, D.I. 7 at 5) Goldman argues that the proof of claim is thus separate and distinct from the state-law causes of action asserted in the Complaint, and, accordingly, the proof of claim does not override Goldman's right to have state-law causes of action decided by a jury.

Similarly, Pickard's proof of claim asserts $18,750 in unpaid fees for services rendered between March 2013 and May 2013. Pickard's claim was later satisfied in full by payment on October 3, 2014. (*See* Civ. No. 15-1113, D.I. 5-1)  Pickard argues that the fact it filed this proof of claim for a nominal amount of unpaid professional fees does not alone transform the adversary proceeding into a core proceeding. (*See* Civ. No. 15-1113, D.I. 2 at 5 n.5)  Pickard cites *In re Complete Management, Inc., v. Arthur Andersen, LLP*, 2002 WL 31163878, *3 (S.D.N.Y. Sept. 27, 2002), where the district court noted that although filing a proof of claim has been said to subject a claimant to the equitable jurisdiction of the bankruptcy court, no case has suggested that equitable jurisdiction extends to an action that is "70 times greater than the proof of claim." *See id.* Similarly, the Complaint alleges losses to investors of millions of dollars and seeks judgment in the form of actual damages in an amount to be proven at trial, as well exemplary damages. (*See* Adv. D.I. 1 at 52) Although Trustee does not set a dollar amount on the recovery it seeks, Pickard's nominal amount of unpaid fees is likely a small fraction of it.

"Courts should not be eager to embrace an implied waiver of constitutional rights where there is an affirmative and timely assertion of those rights." *NDEP*, 203 B.R. at 912-13. The

Court agrees that the mere filing of a proof of claim is not necessarily dispositive of the issue of whether a defendant has waived its right to a jury trial and thereby submitted to the equitable jurisdiction of the Bankruptcy Court. As the Third Circuit stated in *Billing*, the fact that a proof of claim is filed "does not complete the analysis. A court must also ask whether resolution of the particular dispute at issue is necessarily part of the process of the disallowance and allowance of claims." *See Billing*, 22 F.3d 1251 at n.14. However, the Court need not "complete the analysis" in the context of these Motions to Withdraw. Even assuming that Defendants have not submitted to the equitable jurisdiction of the Bankruptcy Court by filing their proofs of claim, Defendants have not established cause to warrant permissive withdrawal of the reference at this time.

### B. Cause For Permissive Withdrawal

As noted by the Third Circuit, "cause" to withdraw the reference "will be present in only a narrow set of circumstances." *In re Pruitt*, 910 F.2d 1160, 1171 (3d Cir. 1990) (internal quotation marks and citations omitted). Although the statute does not define "cause shown," the Third Circuit has set forth five factors that should be considered in determining whether cause exists to withdraw the reference: (1) uniformity in bankruptcy administration, (2) reducing forum shopping and confusion, (3) fostering the economical use of the debtors' and creditors' resources, (4) expediting the bankruptcy process, and (5) the timing of the request for withdrawal. *See Pruitt*, 910 F.2d at 1168 (discussing non-exhaustive list of factors). An additional factor is whether the right to a jury trial has been asserted. *See NDEP*, 203 B.R. at 908. Before considering these factors, however, the Court "should first evaluate whether the claims are core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

Pickard contends, and at oral argument Trustee conceded, that the claims against Pickard for professional negligence, malpractice, and breach of contract are non-core proceedings. The Court agrees that these state common law claims are non-core and, absent consent of the parties, the Bankruptcy Court is without authority to enter a final judgment or order with respect to those claims. *See Stern v. Marshall*, 131 S. Ct. 2594, 2596 (2011) (holding bankruptcy court lacked constitutional authority to "resolve and enter final judgment on a state common law claim"). These same state common law claims are asserted against Goldman -- in addition to claims arising under §§ 544, 548, and 502(d) of the Bankruptcy Code. Thus, the claims asserted against Goldman include both core and non-core proceedings.

Defendants argue that consideration of whether the claims are core or non-core is a threshold consideration and weighs in favor of permissive withdrawal, as the Bankruptcy Court cannot enter final orders or judgments as to the non-core claims. (*See* Civ. No. 15-1113, D.I. 2 at 2; Civ. No. 15-1194, D.I. 2 at 1) Trustee argues that to the extent the claims are non-core or *Stern* claims,[4] the remedy is simply to allow the Bankruptcy Court to hear the matter and issue proposed findings of fact and conclusions of law, pursuant to 28 U.S.C. § 157(c)(1). (*See* Civ. No. 15-1113, D.I. 5 at 8) Trustee argues that allowing the Bankruptcy Court to retain jurisdiction over pretrial matters in this case is the proper course, in light of the fact that the Bankruptcy Court has presided over the case for three years and is familiar with the parties and events that precipitated the Debtors' Chapter 11 filing. (*See* Civ. No. 15-1113, D.I. 5 at 10)

---

[4] Section 157(b)(1) authorizes bankruptcy courts to enter final judgments in "core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). Proceedings that fit under the ambit of 28 U.S.C. § 157(b)(2)'s list of core proceedings, but may not be adjudicated as a constitutional matter by a bankruptcy court, are often referred to as "*Stern* claims." When a bankruptcy court is presented with a *Stern* claim, the proper course is to issue proposed findings of fact and conclusions of law. *See Executive Benefits Ins. Agency v. Arkison,* 134 S. Ct. 2165, 2170 (2014).

The Court agrees with Trustee that the mere fact the Complaint asserts non-core claims does not mandate withdrawal. "Proceedings should not be withdrawn for the sole reason that they are non-core." *Hatzel*, 106 B.R. at 371. In non-core proceedings, the bankruptcy court is given the power to submit proposed findings of fact and conclusions of law to the district court. *See* 28 U.S.C. § 157(c)(1). Moreover, "[t]he 'cause shown' requirement in section 157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy." *Schubert v. Lucent Techs., Inc.,* 2004 U.S. Dist. LEXIS 25169, at *6 (D. Del. Nov. 16, 2004) (internal citation and quotation marks omitted).

The Court now turns to the "for cause" factors set forth by the Third Circuit in *Pruitt*. With respect to the first factor, promoting uniformity in bankruptcy administration, Trustee argues that keeping the proceeding in the Bankruptcy Court will prevent inconsistent factual findings on background issues common to this litigation and the other related litigation brought by Trustee. Trustee has initiated several adversary proceedings, asserting causes of action against various officers, directors, professionals, and advisors, which are currently pending before the Bankruptcy Court and will necessarily involve overlapping facts and witnesses.[5] While Trustee does not specify what facts and issues may overlap as between these claims and those in other adversary proceedings, the Court can infer that some overlap will occur, and thus it

---

[5] The docket of the Chapter 11 cases reflects that there are at least three other adversary proceedings pending before the Bankruptcy Court which arise from the same alleged facts and circumstances, each of which remains in the early stages of litigation: (1) Adv. Pro. No. 15-50210-BLS (Bankr. D.I. 1704) (adversary proceeding against former director and audit committee chairman); (2) Adv. Pro. No. 15-50927-BLS (Bankr. D.I. 1745) (adversary proceeding against former outside general counsel); and (3) Adv. Pro. No. 15-50928-BLS (Bankr. D.I. 1746) (adversary proceeding against former officers and directors).

is more efficient for the Bankruptcy Court to preside over the initial stages of these proceedings and pretrial matters. This factor weighs against permissive withdrawal.

With respect to the second factor, reducing forum shopping and confusion, Trustee argues that keeping the proceeding in the Bankruptcy Court will diminish the risk of forum shopping. (*See* Civ. No. 15-1113, D.I 5 at 11) Trustee argues that Defendants' filing of these pre-answer motions is indicative of their "desire to shop for a different forum," and "withdrawing the reference should not be used as an 'escape hatch' for matters properly before the Bankruptcy Court." (*Id.* (quoting *In re Smith Corona Corp.*, 205 B.R. 712, 714 (D. Del. 1996)) The Court is not persuaded that Defendants' motions are a product of forum shopping. Defendants did not initiate the adversary proceeding or choose to have the matter heard in the Bankruptcy Court. This factor favors withdrawal.

With respect to the third factor, fostering the economical use of the Debtors' and creditors' resources, Trustee argues that the Bankruptcy Court has extensive familiarity with parties, issues, and events that precipitated the Chapter 11 filing and that form the basis for these causes of action. (*See* Civ. No. 15-1113, D.I. 5 at 14) Trustee also argues that requiring it to litigate in multiple fora will waste the remaining assets available for distribution to creditors. (*See id.*) The Court agrees that the Bankruptcy Court's familiarity with the underlying facts and issues is an important consideration. Duplicating those efforts at an early stage of the case may result in unnecessary expenses for the parties, particularly given that dispositive motions and settlement may resolve the proceeding in advance of trial. *See In re Circle of Yoakum, Tex.*, 2006 WL 2347710, at *2 (D. Del. June 23, 2006) (finding that judicial economy favored Bankruptcy Court resolving pretrial proceedings because of its familiarity with facts of case); *see also In re EXDS, Inc.*, 2006 WL 2346419, at *2 (D. Del. July 20, 2006) ("[T]he Bankruptcy

Court has the necessary resources to preside over the initial stages of these proceedings in an efficient and effective manner"). Here, it will be more economical for the parties if the Bankruptcy Court oversees the litigation. This factor weighs against permissive withdrawal at this time.

With respect to the fourth factor, expediting the bankruptcy process, Defendants argue that because the Bankruptcy Court cannot enter a final order or judgment on non-core claims, the District Court will eventually have to review proposed findings of fact and conclusions of law *de novo*, so it would be more efficient to withdraw the reference. Trustee argues that divesting the Bankruptcy Court of jurisdiction will delay the proceedings because this Court lacks familiarity with the bankruptcy proceedings and must undertake substantial efforts to understand the parties' positions. (*See id*. at 14) The Court agrees that needing to become familiar with the record at this early stage, and the delay attendant to those efforts, is unnecessary at this time and may affect the administration of the cases. This factor weighs against permissive withdrawal at this time.

With respect to the fifth factor, timing of the request for withdrawal, Congress has mandated that a party seeking to withdraw a proceeding from a bankruptcy court to a district court can do so only upon the filing of a "timely" motion. 28 U.S.C. § 157(d). Section 157, however, does not define what the court should consider timely. *See id*.; *see also In re Allegheny Health Educ. and Research Foundation*, 2006 WL 3843572, *2 (W.D. Pa. Dec. 19, 2006). "A § 157(d) motion is timely if it is filed at the first reasonable opportunity after the movant has notice of the grounds for removal, taking into consideration the circumstances of the proceeding." *In re Schlein*, 188 B.R. 13, 14 (E.D. Pa. 1995). Timeliness is "measured by the stage of the proceedings in the Bankruptcy Court." *In re U.S.A. Floral Products, Inc.*, 2005 WL

3657096, at *1 (D. Del. July 1, 2005) (internal quotation marks omitted). "The purpose of the timeliness provision is to prevent unnecessary delay and stalling tactics." *Schlein*, 188 B.R. at 15.

This case is in its infancy. At the time the motions were filed, the deadline for Trustee to effect service of process had not even passed. (*See* Adv. D.I. 48 (extending deadline through July 11, 2016)) Thus, the Court finds that Defendants' Motions to Withdraw, filed at the very outset of this litigation, were timely made, and this factor does not weigh against permissive withdrawal.

In addition to the *Pruitt* factors, the Court also considers whether the right to a jury trial has been asserted. Defendants contend that withdrawal of the reference is mandated by their right to a jury trial, which the Bankruptcy Court cannot conduct. Although assertion of a right to jury trial coupled with refusal to consent to such trial before the bankruptcy court is not "itself sufficient cause for discretionary withdrawal," it is one of the factors the Court considers. *See Official Comm. of Unsecured Creditors v. Fed. Indus. Prods.*, 2007 WL 211179 at *2 (D. Del. Jan. 26, 2007).

Here, neither of the Defendants has filed an answer or asserted the right to a jury trial, and the fact that Defendants *may* assert their right to a jury trial does not necessarily mandate withdrawal of the reference at this time. *See In re Enron Corp.*, 295 B.R. 21, 27 (S.D.N.Y. 2003) (observing well-settled law that district court is not compelled to withdraw reference simply because party is entitled to a jury trial). Even for non-core claims for which a jury trial is requested, the Bankruptcy Court is capable of functioning in a role similar to that of a magistrate judge by handling pretrial issues. *See SNMP Research Int'l v. Nortel Networks, Inc.*, 539 B.R. 704, 710 (D. Del. Sept. 9, 2015). Where, as here, there are several adversary proceedings

involving overlapping facts and issues, the assistance of the Bankruptcy Court will be even more critical to handling dispositive motions, discovery issues, and other pretrial matters in a consistent and efficient manner.

The Court concludes that consideration of all of the appropriate factors favors denying Defendants' Motions to Withdraw at this time. Permitting the Bankruptcy Court to oversee pretrial matters in this proceeding, and withdrawing it only when it is ripe for a jury trial, promotes judicial economy and a timely resolution of this case. Should the matter indeed proceed to trial, the Court recognizes that this resolution will have drawbacks. The Bankruptcy Court will not be able to enter a final judgment as to the non-core claims and must issue proposed findings of fact and conclusions of law. *See* 28 U.S.C. § 157(c). As the Court has previously observed, however, the complex framework of bankruptcy jurisdiction and the accompanying constitutional limitations may make such a result unavoidable. *See SNMP Research*, 539 B.R. at 712.

## V.   CONCLUSION

For the reasons explained above, the Court will deny the Motions to Withdraw without prejudice. A separate Order will be entered.

September 26, 2016
Wilmington, Delaware

HON. LEONARD P. STARK
UNITED STATES DISTRICT JUDGE